AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
Sean Riordan (SBN 255752)
Angélica Salceda (SBN 296152)
Vasudha Talla (SBN 316219)
Mollie Lee (SBN 251404)
William S. Freeman (SBN 82002)
Christine P. Sun (SBN 218701)
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437
Email: sriordan@aclunc.org
       asalceda@aclunc.org
       vtalla@aclunc.org
       mlee@aclunc.org
       wfreeman@aclunc.org
       csun@aclunc.org

*Attorneys for Plaintiff-Petitioner Pangea Legal Services*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO-OAKLAND DIVISION**

| | |
|---|---|
| PANGEA LEGAL SERVICES,<br><br>Plaintiff-Petitioner,<br><br>v.<br><br>KEVIN MCALEENAN, Acting Secretary of Homeland Security; MARK MORGAN, Acting Director of U.S. Immigration and Customs Enforcement; DAVID JENNINGS, Field Office Director, San Francisco Field Office, U.S. Immigration and Customs Enforcement,<br><br>Defendant. | Case. No. ___<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION FOR A WRIT OF HABEAS CORPUS** |

Plaintiff-Petitioner Pangea Legal Services brings this complaint and petition for a writ of habeas against officials from the Department of Homeland Security who are detaining or will imminently detain its clients and prospective clients in violation of various rights secured by the immigration laws and U.S. Constitution.

**INTRODUCTION**

1. This case arises out of the sweeping immigration enforcement actions that the government has announced will begin on Sunday, July 14, 2019. As a part of those actions, agents of U.S. Immigration and Customs Enforcement ("ICE") and other components of the Department of Homeland Security ("DHS") plan to arrest noncitizens and process them for immediate expulsion from the United States. For noncitizens arrested within the jurisdiction of ICE's San Francisco field office, ICE will initially detain and process noncitizens at its offices in San Francisco and Stockton.

2. ICE has informed Pangea Legal Services and other local providers of immigration legal services that it will not allow them to access clients and prospective clients on Sunday, July 14. Despite refusing to allow access to counsel, ICE concurrently informed Pangea and other service providers that it will process those noncitizens on July 14.

3. ICE's actions reflect longstanding practices that violate the immigration laws and the U.S. Constitution. For decades, DHS's component and predecessor agencies – including ICE – have arrested non-citizens, prevented them from meeting with their attorneys during an initial processing period, and pressured them into signing documents that effectively waive their rights. The results have been catastrophic, resulting in people being summarily torn apart from their families without any judicial process.

**THE PARTIES**

1. Plaintiff-Petitioner Pangea Legal Services is a non-profit corporation incorporated in San Francisco, California. Pangea was created to help fill the critical need for the representation of detained and non-detained individuals in the San Francisco immigration court system. The need arises from the complexity of immigration law, the negative consequences of

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF & PETITION FOR A WRIT OF HABEAS CORPUS

deportation, and the fact that many immigrants in removal proceedings are eligible for relief or protection under existing laws.

4. Defendant Kevin McAleenan is the acting Secretary of DHS, has ultimate authority over the manner in which Plaintiff-Petitioner's clients and prospective clients are being detained, and is a custodian of those clients and prospective clients. He is sued solely in his official capacity.

5. Defendant Mark Morgan is the acting Acting Director of ICE, has authority over the manner in which Plaintiff-Petitioner's clients and prospective clients are being detained, and is a custodian of those clients and prospective clients. He is sued solely in his official capacity.

6. Defendant David Jennings is the Director of ICE's San Francisco Field Office, has direct authority over the manner in which Plaintiff-Petitioner's clients and prospective clients are being detained, and is a custodian of those clients and prospective clients. He maintains his office in the City and County of San Francisco, within this judicial district. He is sued solely in his official capacity.

## JURISDICTION AND VENUE

7. This Court has habeas corpus jurisdiction pursuant to 28 U.S.C. §§ 2241 *et seq.*, as protected under Art. I § 9, cl. 2 of the United States Constitution (the "Suspension Clause"), and federal question jurisdiction under 28 U.S.C. § 1331. This case arises under the United States Constitution; the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*; the Administrative Procedure Act ("APA"), 5 U.S.C §§ 701 *et seq.*; the First Amendment; and the Due Process Clause of the Fifth Amendment.

8. This Court has jurisdiction to grant declaratory and injunctive relief pursuant to 28 U.S.C. § 2201-02, Federal Rule of Civil Procedure 65, and its inherent equitable power. Further, this Court has jurisdiction pursuant to 28 U.S.C. 2241(c)(1) to grant a writ of habeas corpus for "custody in violation of the Constitution or laws or treaties of the United States."

9. Venue in this district is proper under 28 U.S.C. § 1391(b) and (e). The defendants-respondents are officers or employees of the United States acting in their official capacities and at least one of the defendants-respondents, Mr. Jennings, who is the legal custodian of Plaintiff-

Petitioner's clients and prospective clients, resides in this District.  In addition, a substantial part of the events giving rise to the claims in this action took place in this District, since ultimate decisions regarding Plaintiff-Petitioner's clients and prospective clients are the responsibility of Defendant-Respondent Bonner in his capacity as Director of ICE's San Francisco Field Office.

## **LEGAL BACKGROUND**

10. The immigration laws provide noncitizens a number of possible ways to pursue lawful status in the United States through proceedings before U.S. Citizenship and Immigration Services and/or an immigration judge.  For people who have no lawful immigration status, the possible immigration benefits include, but are not limited to, asylum, withholding of removal, withholding under the U.N. Convention Against Torture ("CAT"), non-lawful permanent resident cancellation of removal, adjustment of status, and various visas for victims of crimes. People with an administratively final order of removal that has not been executed may seek to reopen their removal proceedings.  And even people who have been formally removed from the United States previously and are subject to reinstatement of their prior removal orders are still eligible for certain relief, including withholding of removal and withholding under CAT.  If a noncitizen seeks such benefits and is denied, administrative appeals and judicial review are available.

11. When ICE arrests a noncitizen, there are various ways it may seek to expel that person from the United States without a hearing.  For example, ICE may be able to quickly expel someone who has no prior immigration history if that person signs for what is known as "voluntary return."  ICE may similarly be able to quickly expel someone with a reinstated prior removal order if that person declines to seek any potential relief against removal.  At times, ICE is able to expel a person – or at least initiate a formal expulsion by transferring them to a location closer to the U.S.-Mexico border or an airport from which they can be flown to their home country – within hours of taking them into custody. The initial hours and days following an ICE arrest are accordingly critical to whether a person will be able to remain here in the United States

or will instead be on a fast track to expulsion – which often carries the "loss of all that makes life worth living," *Bridges v. Wixon*, 326 U.S. 135, 147 (1945), including family and livelihood.

12. Given these high stakes, the immigration laws and the U.S. Constitution protect the right of people in ICE custody to obtain and communicate with counsel and require ICE to ensure that any waiver of rights is voluntary and knowing.

13. Immigrants' right to "obtain counsel" is "guaranteed by 8 U.S.C. § 1362 and the due process clause." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 551 (9th Cir. 1990) (affirming injunction prohibiting, inter alia, immigration officers from interfering with communication between detainees and attorneys). This necessarily includes the right to consult with an attorney before deciding whether to engage in a full attorney-client relationship or to pursue or abandon certain legal claims. *See Am. Civil Liberties Union Fund of Michigan v. Livingston Cty.*, 796 F.3d 636, 645 (6th Cir. 2015) ("An attorney must be able to communicate with an inmate in confidence before litigation and before establishment of a formal attorney-client privilege in order to offer legal advice or determine whether an actionable claim exists.").

14. There is also a universal prohibition against holding a person incommunicado. "There is a well established tradition against holding prisoners incommunicado in the United States. It would be hard to find an American who thought people could be picked up by a policeman and held incommunicado, without the opportunity to let anyone know where they were, and without the opportunity for anyone on the outside looking for them to confirm where they were." *Halvorsen v. Baird*, 146 F.3d 680, 688–89 (9th Cir. 1998). This right applies to civil detainees such as those detained by ICE as well as those in criminal custody. Id. ("That a person is committed civilly . . . cannot diminish his right not to be held incommunicado.")

15. The courts have thus universally condemned recent attempts by the government to hold immigration detainees without access to counsel. *See Rodriguez-Castillo v. Nielsen*, 18-cv-01317-ODW, ECF No. 10 (C.D. Cal. June 21, 2018) (temporary restraining order ensuring access to counsel for immigrants imprisoned at FCI Victorville); *Innovation Law Lab v. Nielsen*, 342 F. Supp. 3d 1067 (D. Or. 2018) (injunction ensuring access to counsel for immigrants

imprisoned at FCI Sheridan); *see also Lyon v. ICE*, 171 F.Supp.3d 961, 981 (N.D. Cal. 2016) (denying in part government's motion for summary judgement in case concerning telephonic access to counsel for long-term ICE detainees in part because "detainees have a Fifth Amendment guarantee to a full and fair hearing, and this includes access to counsel (of their own choosing)").

16. DHS's own regulations and other applicable law also clearly provide noncitizens the right to access counsel after being arrested by ICE. *See* 8 C.F.R. § 292.5(b) (providing that during any examination by a DHS officer, a noncitizen has the right to be represented by an attorney); 8 C.F.R. § 287.3(a) (providing that ICE will examine arrested noncitizens); *see also* 5 US.C. § 555(b) (providing the right to counsel whenever an individual is compelled to appear before an agency).

17. Under the Due Process Clause of the Fifth Amendment, noncitizens are also protected against undue governmental pressure to surrender their rights to seek immigration benefits. Courts have broadly recognized that immigration enforcement agencies may not use coercion and misinformation to obtain such waivers. *See Lopez-Venegas v. Johnson*, 13-cv-3972 JAK, ECF No. 53 (C.D. Cal.) (noting that "an individual cannot make a knowing choice to accept voluntary departure unless there has been full disclosure of the material consequences of that decision"); *United States v. Ramos*, 623 F.3d 672, 682-82 (9th Cir. 2010) (waiver of a right to appeal stipulated deportation order is not intelligent if necessary translation has not been provided); *Ibarra-Flores v. Gonzales*, 439 F.3d 614, 620 (9th Cir. 2006) (remanding to determine whether petitioner knowingly and voluntarily signed voluntary departure form); *Orantes-Hernandez*, 919 F.2d at 559 (affirming injunction "based mainly upon the district court's findings of a pattern and practice of interference and coercion on the part of INS agents which prevented Salvadoran aliens who feared return to their country from exercising their right to apply for asylum").

18. The First Amendment guarantees attorneys the right to consult with and advise clients and prospective clients. *See generally Legal Services Corp. v. Velazquez*, 531 U.S. 533 (2001);

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF & PETITION FOR A WRIT OF HABEAS CORPUS

*In re Primus*, 436 U.S. 412 (1978); *Nat'l Ass'n for Advancement of Colored People v. Button*, 371 U.S. 415, 429 (1963). An attorney's effectiveness in pursuing litigation "often depends on the ability to make legal assistance available to suitable litigants." *In re Primus*, 436 U.S. at 431. Thus, the First Amendment "require[s] a measure of protection for advocating lawful means of vindicating legal rights," that allows an attorney to advise a client or refer her to another attorney or legal organization. *Id*. at 432 (internal quotations omitted).

19. The First Amendment also guarantees noncitizens in detention the right to communicate with the outside world. *Valdez v. Rosenbaum*, 302 F.3d 1039 (9th Cir. 2002). This includes the right to make telephone calls and receive in-person visitors. *See id*.; *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986) ("Courts have recognized detainees' and prisoners' first amendment right to telephone access."). The First Amendment further protects the right to hire and consult with an attorney. *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 611 (2005), *as amended on denial of reh'g* (9th Cir. July 21, 2005). The state may not unreasonably restrict this right. *Id*.

## FACTUAL ALLEGATIONS

**Imminent Immigration Raids and ICE's Refusal to Grant Access to Counsel**

20. On July 11, 2019, major news outlets reported that U.S. Immigration and Customs Enforcement ("ICE") planned to begin raids on Sunday, July 14 to arrested thousands of noncitizens in major U.S. cities for purposes of deporting them. See Caitlin Dickerson and Zolan Kanno-Youngs, *Thousands are Targeted as ICE Prepares to Raid Undocumented Migrant Families*, N.Y. Times (July 11, 2019), available at https://www.nytimes.com/2019/07/11/us/politics/ice-families-deport.html. San Francisco is reported to be one of the target cities. *Id*.

21. On July 11, 2019, organizations who routinely represent noncitizens who have been detained by ICE dispatched two delegations of attorneys to ICE's San Francisco Field Office and ICE's Stockton office. The two delegations requested access to newly arrested community

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF & PETITION FOR A WRIT OF HABEAS CORPUS

7

members. The delegations also submitted a letter to ICE leadership at both offices underscoring the availability of pro bono legal assistance for newly arrested noncitizens.

22. The San Francisco delegation met with Assistant Field Office Director ("AFOD") Richard Chang. AFOD Chang confirmed that the San Francisco Field Office is closed on Sundays and stated that attorneys would have to follow up with newly detained noncitizens once they are processed and placed in detention, if they are not deported the same day.

23. ICE Supervisor Brian Farias from the Stockton Field Office confirmed that the Stockton office is and would be closed to attorneys on Sunday. In effect, Pangea and other legal service providers would not be allowed to provide legal advice or to otherwise consult with people ICE plans to arrest and process on Sunday, July 14.

**The Government's Longstanding Practice of Denying Access to Counsel and Using Misinformation and Coercion to Pressure Noncitizens to Surrender Their Rights**

24. DHS's component agencies and their predecessor enforcement agencies have as a matter of routine practice prevented noncitizens from having access to their attorneys in the period directly after their arrest.

25. During sweeping enforcement actions directed out of the San Francisco Field Office in February 2018, ICE refused to permit noncitizens whom it detained for processing to access their attorneys, and refused to permit those attorneys access to their clients. ICE also refused to provide attorneys information about specific people it had detained there. ICE rapidly deported several people arrested during those enforcement actions, preventing their attorneys or families from communicating with them. At the same time, ICE pressured detainees who had not been permitted access to attorneys into waiving their rights and signing documents that resulted in their expulsion from the United States. For example, a man arrested in Merced County was told he could not speak with his family unless he first agreed to sign a "voluntary return" document.

26. In November and December 2018, during enforcement actions directed out of the San Francisco Field Office, ICE regularly moved people between vans and its offices in Morgan Hill. During these incidents, officers intermittently pressured people to sign various documents that would result in their summary expulsion. Attorneys responded to the enforcement actions and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF & PETITION FOR A WRIT OF HABEAS CORPUS

1  came to the site to represent those in ICE custody.  But ICE denied the attorneys access to the
2  recent arrestees.

3      27. On May 21, 2019, Pangea Legal Services sought to provide legal services to a client
4  whom ICE had recently arrested and taken to its Stockton office, which is overseen by the San
5  Francisco Field Office.  A Pangea attorney sought to speak with the client by phone after
6  submitting a form (G-28) that is used by DHS to track detainee representation.  The attorney
7  made three calls to the Stockton office and spoke to someone there during each call, but was told
8  he could not speak with his client and instead was forced to leave a voice message for ICE
9  Officer Reyes.  The attorney did not receive a call back from ICE until the next day, by which
10 time his client had already been processed.

11     28. On July 9, 2019, the same attorney sought to provide legal services to two other clients
12 whom ICE had recently arrested and taken to the Stockton office.  The attorney immediately
13 submitted a G-28 form and then called the office.  Officer Heinz (who may work for ICE or for
14 ICE contractor G4S) transferred his call to the voicemail of ICE Officer Miller, and the attorney
15 left a message.  The attorney then called ICE four times over the next approximately 40 minutes,
16 attempting to speak to his client.  Each time, ICE personnel told him that they could do nothing
17 more than look for ICE Officer Miller or allow him to leave a voicemail for ICE Officer Miller.
18 ICE personnel refused to connect the attorney with the clients or even tell him whether the
19 clients were still being processed in the Stockton office.

20     29. Only the following day did ICE connect the attorney with his clients.  By that time, the
21 client were at an ICE office in San Bernardino, on their way to being physically expelled from
22 the United States.

23     30. DHS and its predecessors have engaged in similar conduct for decades.  In the early
24 1980s, a class of Salvadoran asylum seekers sued Border Patrol to stop the agency from
25 impeding access to counsel and from pressuring them to abandon their claims.  As a result of that
26 litigation, a district court ordered the agency to cease "employ[ing] threats, misrepresentation,
27 subterfuge or other forms of coercion, or in any other way attempt to persuade or dissuade"

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF & PETITION FOR A WRIT OF HABEAS CORPUS

Salvadoran nationals from pursuing asylum. *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 386 (C.D. Cal. 1982), *perm. injunction entered by Orantes-Hernandez v. Meese*, 685 F. Supp. 1488 (C.D. Cal. 1988), *aff'd sub nom Orantes-Hernandez v. Thornburgh*, 919 F.2d 549 (9th Cir. 1990). Also in the 1980s, a class of unaccompanied minor immigrants similarly challenged the Immigration and Naturalization Service's (INS) practice of "coerc[ing] class members into unknowingly and involuntarily … waiving their rights to a deportation hearing or any other form of relief." *Perez-Funez v. District Director*, 619 F. Supp. 656, 656–57 (C.D. Cal. 1985). In that case, the district court found the INS's procedures unconstitutional and entered permanent injunctive relief in favor of the class. *Id.* at 669–70. More recently, ICE detained and processed people without access to counsel in a facility in Los Angeles known as B-18. The lawsuit resulted in a settlement that provided meaningful access to counsel for people there.[1]

31. Beyond these cases, DHS's reliance on omissions, misinformation, pressure, coercion and threats against recent arrestees is well documented. The group No More Deaths has documented numerous incidents of migrants being "[c]oerc[ed] into signing voluntary repatriation documents under threat of violence, criminal charges, or lengthy detentions" by Border Patrol officers.[2] Similarly, a report on "stipulated removals"—a summary process through which immigration detainees give up the right to contest removal by signing a form that is then reviewed by an immigration judge—noted that "immigrants have reported being coerced to sign stipulated orders of removal or being pressured to accept stipulated orders of removal as a way to get out of immigration detention."[3] And the American Civil Liberties Union has documented the ways that DHS couples "reinstatement of removal, voluntary return, administrative removal, and stipulated removal … with intimidation, misinformation, and

---

[1] *See* https://www.aclu.org/press-releases/intolerable-conditions-downtown-immigration-facility-will-end-under-terms-lawsuit (last accessed July 10, 2019)
[2] No More Deaths, A CULTURE OF CRUELTY 32 (2011), available at http://forms.nomoredeaths.org/wp-content/uploads/2014/10/CultureOfCruelty-full.compressed.pdf (last accessed July 9, 2019).
[3] Jennifer Lee Koh, Jayashri Srikantiah & Karen C. Tumlin, DEPORTATION WITHOUT DUE PROCESS 2 (2011), available at https://www.nilc.org/wp-content/uploads/2016/02/Deportation-Without-Due-Process-2011-09.pdf (last accessed July 9, 2019).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF & PETITION FOR A WRIT OF HABEAS CORPUS

coercion" in a way that "boost[s] the number of people deported" but without "guarantee[ing] a fair process or to deliver justice."[4]

32. These practices regularly result in the expulsion of U.S. citizens and exceptionally vulnerable people from the United States. For example, ICE expelled Peter Guzman, a mentally-disabled U.S. citizen, to Mexico after pressuring him into signing for voluntary return.[5] *See Guzman, et al. v. Chertoff, et al.*, No. 08-cv-01327 (C.D. Cal., filed Feb. 27, 2008). Last year, the New Yorker profiled the case of a woman, Laura S., who was pressured into signing summary expulsion documents by DHS officers and then killed by a former domestic partner in Mexico shortly thereafter.[6]

### Pangea's Activities in Serving Non-Citizens

33. Pangea is a comprehensive immigration legal services agency serving over 400 clients annually and focused on protecting and expanding the rights of low-income people and asylum seekers. Pangea provides legal consultations, limited-scope services, and full representation, especially in the area of deportation defense. Pangea represents detained immigrants in bond proceedings, removal hearings, and in encounters with ICE. Pangea offers pro-bono and low-cost services for individuals in removal proceedings and those currently being held in immigration detention. Approximately 80 per cent of Pangea's clients are in deportation proceedings.

34. Since the announcement that attorneys would not have access on Sunday, Pangea has had to divert resources away from its core program to address the attorney access issues. In just the

---

[4] ACLU, AMERICAN EXILE: RAPID DEPORTATIONS THAT BYPASS THE COURTROOM 14 (2014), available at https://www.aclu.org/files/assets/120214-expeditedremoval_0.pdf#page=4 (last accessed July 9, 2019).

[5] Other U.S. citizens have also been subjected to "voluntary return" by DHS officers. For example, agents expelled Luis Alberto Delgado, a U.S. citizen born in Texas, under color of "voluntary return" in June 2010, and only allowed him to return to the United States after protracted advocacy by his attorney. *See* Kari Huus, *Wrongfully Deported American Home after 3 Month Fight*, NBCNews.com (September 16, 2010), available at http://www.nbcnews.com/id/39180275/ns/us_news-immigration_a_nation_divided/t/wrongfully-deported-american-home-after-month- fight/ (last visited July 10, 2019).

[6] Sarah Stillman, *When Deportation Becomes a Death Sentence*, NEW YORKER (January 15, 2018), available at https://www.newyorker.com/magazine/2018/01/15/when-deportation-is-a-death-sentence (last visited July 10, 2019).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF & PETITION FOR A WRIT OF HABEAS CORPUS

last few days, Pangea attorneys have spent hours meeting with ICE officials and other stakeholders simply trying to respond to ICE's creation of unlawful impediments to accessing counsel.  This has diverted Pangea's staff time away from its work representing other clients.

35. Without being able to access clients, Pangea is essentially forced to proceed blindfolded in communicating with ICE about their case and advising their family members.  This makes it difficult to provide adequate and ethical representation.  The denial of access also negatively impacts Pangea's role as a member of local rapid response networks, preventing those networks from building trust in the community that attorneys will be able to provide consultations when individuals are detained**.**

**FIRST CLAIM FOR RELIEF**
Violation of the First Amendment of the United States Constitution
(Right to Provide Legal Advice and Right to Counsel)

36. Plaintiff-Petitioner realleges and incorporate by this reference each of the foregoing paragraphs, as if fully set forth in this claim for relief.

37. Defendants-Respondents' policies, practices, and conduct are denying Plaintiff-Petitioner its right to access clients and prospective clients in order to advise them of their rights and allow them to access the courts, in violation of the First Amendment.

38. Defendants-Respondents' policies, practices, and conduct are denying noncitizens their rights to communicate with counsel, in violation of the First Amendment

**SECOND CLAIM FOR RELIEF**
Violation of the INA, 8 U.S.C. § 1362; immigration regulations, 8 C.F.R. 292.5;
and the Due Process Clause of the Fifth Amendment of the U.S. Constitution
(Access to Counsel)

39. Plaintiff-Petitioner realleges and incorporate by this reference each of the foregoing paragraphs, as if fully set forth in this claim for relief.

40. Defendants-Respondents' policies, practices, and conduct are denying noncitizens access to counsel, in violation of the INA, its associated regulations, and Constitutional guarantees of due process.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF & PETITION FOR A WRIT OF HABEAS CORPUS

## THIRD CLAIM FOR RELIEF
Violation of the INA, various provisions concerning immigration benefits; immigration regulations, various provisions concerning immigration benefits; and the Due Process Clause of the Fifth Amendment of the U.S. Constitution
(Waiver of Rights)

41. Plaintiff-Petitioner realleges and incorporate by this reference each of the foregoing paragraphs, as if fully set forth in this claim for relief

42. Defendants-Respondents' policies, practices, and conduct are denying noncitizens their rights to seek available immigration benefits and to avoid an unlawful waiver of those rights, in violation of the INA, its associated regulations, and Constitutional guarantees of due process.

WHEREFORE, Plaintiff-Petitioner respectfully prays for a judgment as follows:

(a) Declaring that Defendants-Respondents have violated the rights of Plaintiff-Petitioner under the INA, its associated regulations, the First Amendment, and the Due Process Clause of the Fifth Amendment;

(b) Granting emergency relief prohibiting Defendants-Respondents from processing any noncitizen until they are able to access counsel or, in the alternative requiring Defendants-Respondents to provide counsel access to noncitizens ICE is processing on outside of normal weekday business hours.

(c) Granting injunctive relief (including, but not limited to, habeas relief) prohibiting Defendants-Respondents from preventing noncitizens meaningful access to counsel and from relying on misinformation or pressure to attempt to convince noncitizens to surrender their rights to seek immigration benefits;

(d) Awarding Plaintiffs their reasonable attorney fees and costs; and

(e) Granting any additional relief as may be just and proper.

//
//
//
//

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF & PETITION FOR A WRIT OF HABEAS CORPUS

13

Respectfully submitted,

Dated: July 12, 2019           /s/ Sean Riordan

                               Sean Riordan (SBN 255752)
                               Angélica Salceda (SBN 296152)
                               Vasudha Talla (SBN 316219)
                               Mollie Lee (SBN 251404)
                               William S. Freeman (SBN 82002)
                               Christine P. Sun (SBN 218701)
                               AMERICAN CIVIL LIBERTIES UNION
                               FOUNDATION OF NORTHERN CALIFORNIA
                               Attorneys for Plaintiff-Petitioner