UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PANGEA LEGAL SERVICES,

Plaintiff,

v.

KEVIN MCALEENAN, et al.,

Defendants.

Case No. 19-cv-04027-SK   (JD)

**ORDER RE TRO APPLICATION**

Re: Dkt. No. 5

On the limited record before the Court, plaintiff's application for a temporary restraining order is **DENIED**.

## BACKGROUND

Plaintiff Pangea Legal Services describes itself as a non-profit corporation "created to help fill the critical need for the representation of detained and non-detained individuals in the San Francisco immigration court system." Dkt. No. 1 ¶ 1. Pangea has brought suit against defendants Kevin McAleenan, the Acting Secretary of the Department of Homeland Security; Mark Morgan, the Acting Director of the U.S. Immigration and Customs Enforcement agency ("ICE"); and David Jennings, the Director of ICE's San Francisco Field Office. *Id*. ¶¶ 4-6.

The complaint involves the widely publicized "raids" that ICE will conduct on Sunday, July 14, 2019, to detain, in Pangea's words, "thousands of noncitizens in major U.S. cities" -- including San Francisco -- "for purposes of deporting them." *Id.* ¶ 20. Pangea does not challenge the raids themselves, but the possibility that detainees will be denied access to lawyers and legal help during a critical decision-making period immediately after they are arrested. The specific concern is that ICE offices are closed Sunday, and Pangea fears that detainees will be pressured into agreeing to voluntary departures without the benefit of legal advice before the offices open on Monday. *Id*. ¶¶ 3, 11, 22-23, 25-26. Pangea says that an Assistant Field Office Director and ICE

Supervisor have confirmed that attorneys will not have access to newly detained noncitizens at the San Francisco Field Office and the Stockton Field Office this Sunday. *Id*. ¶¶ 22-23.

The complaint asserts three claims for relief: (1) violation of the First Amendment of the United States Constitution (Right to Provide Legal Advice and Right to Counsel); (2) violation of the Immigration and Nationality Act, 8 U.S.C. § 1362 ("INA"); immigration regulations, 8 C.F.R. § 292.5; and the Due Process Clause of the Fifth Amendment of the United States Constitution (Access to Counsel); and (3) violation of the INA, various provisions concerning immigration benefits; immigration regulations, various provisions concerning immigration benefits; and the Due Process Clause of the Fifth Amendment of the United States Constitution (Waiver of Rights). *Id*. ¶¶ 36-42.

Pangea filed with the complaint an application for a temporary restraining order and preliminary injunction. Dkt. No. 5. The TRO application asks the Court to enjoin defendants "from immediately executing the removal or voluntary departure of any person detained at the Stockton office, at 630 Sansome, or at any other location that does not allow counsel to meet with clients and potential clients within the jurisdiction of ICE's San Francisco Field Office between 6:00 p.m. on Friday, July 12, and 10:00 a.m. on Monday, July 15 unless that person has had an opportunity to consult with counsel." Dkt. No. 8 at ECF p. 2. In the alternative, the application asks for an order requiring defendants to "provide every person detained" at those locations "between 6:00 p.m. on Friday, July 12, and 10:00 a.m. on Monday, July 15, access to counsel before taking any action to execute the removal or voluntary departure of that person," and that "[t]his access shall include notification of available counsel and an opportunity to consult with counsel by phone or in person." *Id*. at ECF p. 3.

**DISCUSSION**

**I.   LEGAL STANDARD**

A temporary restraining order enjoins conduct pending a hearing on a preliminary injunction. *See* Fed. R. Civ. P. 65(b). When "notice of a motion for a temporary restraining order is given to the adverse party, the same legal standard as a motion for a preliminary injunction applies." *Fang v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 16-CV-06071-JD, 2016 WL

2

1   9275454, at *1 (N.D. Cal. Nov. 10, 2016), *aff'd*, 694 F. App'x 561 (9th Cir. 2017). Pangea filed a proof of service indicating that notice was given by email, and the Court took the additional step of directing Pangea to provide notice to defendants and to advise them of the Court's request for a response. Dkt. No. 5-4; Dkt. No. 6. That response has been filed. Dkt. No. 13. Consequently, the Court will evaluate the application under the standards for a noticed application.

Injunctive relief is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Winter*, 555 U.S. at 20). Alternatively, a preliminary injunction may issue where "serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," if the plaintiff "also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. This reflects our circuit's "sliding scale" approach, in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.*; *see also Arc of Cal. v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014).

## II.   TRO ANALYSIS

On the limited record before the Court, Pangea has not demonstrated that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). A mere possibility of irreparable injury will not suffice. *Id.*[1]

---

[1] The government in its response has raised questions about Article III standing and the Court's subject matter jurisdiction in light of the INA. Dkt. No. 13 at 2-4. The Court is satisfied it has the authority to issue this order, but these issues will need to be taken up in fuller detail should this case proceed beyond this initial step. *See Washington v. Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017) ("At this very preliminary stage of the litigation, [plaintiff] may rely on the allegations in their Complaint and whatever other evidence they submitted in support of their TRO motion to meet their [standing] burden.").

3

### A. PLAINTIFF'S OWN EVIDENCE SHOWS IRREPARABLE INJURY IS POSSIBLE BUT NOT "LIKELY"

The heart of Pangea's TRO application is that detainees will be deprived of access to lawyers and legal counsel during this weekend when they might be pressured by ICE to accept a voluntary departure or to waive other rights that could avoid the detainees' removal. This is a serious concern, and access to an attorney for individuals confronted by the police power of the state is a hallowed principle in our republic. But the problem Pangea faces is that the record, in its current state, offers little more than speculation that defendants will "immediately execut[e] removal orders and voluntary departures of people processed during those hours." Dkt. No. 8 at ECF p. 2. The record shows that ICE does not necessarily take the same course of action for all noncitizens detained at the San Francisco ICE Headquarters or the Stockton Office. Rather, "ICE determines whether people it has taken into custody will be issued a Notice to Appear, will be removed immediately, or processed in other ways." Dkt. No. 5-3, Declaration of Etan Newman ("Newman Decl.") ¶ 13. An individual who is issued a Notice to Appear may even be released. *Id*.

The sum of Pangea's showing of a likelihood of irreparable harm on Sunday reduces to one incident on July 9, 2019, when attorney Newman was unable to communicate with two detainee clients at the Stockton office until they "were already in the process of being deported," and another occasion on May 21, 2019, when Newman's ability to speak with a client was impeded. *Id*. ¶¶ 20-21. While there can be little doubt these two incidents should not have occurred, they are too thin a reed to support a finding of imminent or irreparable harm tomorrow. In addition, as the government points out, both incidents occurred on a Tuesday, Dkt. No. 13 at 3, which weighs against Pangea's suggestion that weekends pose a special threat to detainees.

Similarly, for the First Amendment claim, the record shows that Pangea may not be able to provide legal advice to potential clients this Sunday, but has been told by the government that it can "follow up with clients detained on the weekend after they are processed and placed in detention," Newman Decl. ¶ 16, presumably beginning on Monday, July 15. Taking the current record as a whole, Pangea has established only that it may have to wait a short while before it can exercise its claimed First Amendment rights. Consequently, even accepting for discussion

4

purposes that Pangea has raised a serious question on the merits, it has not established a likelihood of irreparable harm or that the balance of hardships tips sharply in its favor. While it is true that making out the likelihood of a constitutional deprivation "unquestionably constitutes irreparable injury," *Upshaw v. Alameda Cty.*, 377 F. Supp. 3d 1027, 1033 (N.D. Cal. 2019) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)), the record also shows that Pangea has not established that it is likely to suffer a constitutional injury tomorrow, under either the First or Fifth Amendments.

### B. THE GOVERNMENT HAS CONFIRMED THAT DETAINEES' RIGHTS TO COUNSEL WILL BE RESPECTED THIS WEEKEND

The government's representations in its opposition brief provide additional grounds for finding a lack of a likelihood of irreparable harm. The government repeatedly states that "during this weekend (as any other weekend), if ICE's San Francisco Field Office takes an individual into custody, he or she will be given a list of legal services providers and permitted to contact them by telephone; individuals detained over the weekend who already have attorneys will similarly be permitted to contact their own attorneys by telephone." Dkt. No. 13 at 1-2; *id*. at 6 ("should any individual detained by ICE over the weekend choose to communicate with Pangea, he or she can do so by telephone"); *id*. at 7 ("any individuals detained by ICE over the weekend will have telephonic access to counsel"); *id*. at 8 ("detainees can contact attorneys by telephone over the weekend, and see them in person during the business week"). This is the alternative form of relief Pangea has requested. Dkt. No. 8 at ECF p. 3. The government has also represented that the removal process "typically takes quite a bit longer" than suggested by Pangea, and has cited a case that states, "in administrative removal proceedings, an alien has ten days to file a response." Dkt. No. 13 at 8. The Court will rely on these assurances, and expects the government to adhere to them as events unfold.

The government's statements are consistent with noncitizens' right to counsel under the Constitution, and the INA and implementing regulations. "[T]he due process clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 692 (2001). Due process

specifically protects a noncitizen from "interference with [the] ability to obtain counsel." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 551 (9th Cir. 1990); *see also* 8 U.S.C. § 1362 (right to counsel). Access to a lawyer is to be understood pragmatically and holistically. It includes providing "reasonable time to locate counsel." *Biwot v. Gonzales*, 403 F.3d 1094, 1098-99 (9th Cir. 2005). It prohibits the government from placing "numerous obstacles, the cumulative effect of which [is] to prevent aliens from contacting counsel and receiving any legal advice." *Orantes-Hernandez*, 919 F.3d at 565. Government regulations similarly recognize that a right to counsel attaches whenever an individual is examined by ICE personnel. 8 C.F.R. § 292.5(b). And since other regulations require ICE to examine noncitizens upon arrest, 8 C.F.R. § 287.3, the Court expects that a noncitizen will not be removed unless and until a reasonable opportunity to talk with an attorney has been provided. On that score, the government says that "Pangea does not even allege -- much less offer evidence for the proposition -- that ICE routinely coerces individuals into waiving their rights when facilities are closed to attorneys." Dkt. No. 13 at 3. The strong connotation is that the government will not do that here, and the Court will hold defendants to that.

In addition, the Court expects the government will give a list of legal services providers to every individual who is taken into custody this weekend and that every detainee will be permitted to contact one of those providers -- or their own attorney -- by telephone if they wish to do so, prior to agreeing to voluntary departure or any waiver of their rights against removal. The government should be prepared to document compliance with this expectation if called to do so later in the case.

## CONCLUSION

On the current record, Pangea has not demonstrated that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. The request for a temporary restraining order is denied on that basis. *See Alliance for the Wild Rockies*, 632 F.3d at 1132 (likelihood of irreparable harm requisite factor even under sliding scale approach).

Plaintiff's TRO application seeks relief for this weekend only, but also references a request for a preliminary injunction. Dkt. No. 5. To the extent Pangea seeks a preliminary injunction for

1  conduct beyond this weekend, it may notice a motion for hearing on an expedited basis on August
2  6, 2019, at 10:00 a.m. in Courtroom 11, San Francisco.  In that event, the Court expects the parties
3  will be able to work out a mutually agreeable briefing schedule that leaves some time between the
4  reply brief and the hearing date.  The parties may also propose an alternate hearing date.

**IT IS SO ORDERED.**

Dated:  July 13, 2019

_____
JAMES DONATO
United States District Judge